KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0092-DMS |
| Plaintiff, | Date: February 15, 2008<br>Time: 11:00 a.m. |
| v. | |
| BENJAMIN DANIEL WILLIAMS (1),<br>NATHANIEL GREGORY WILLIAMS (2), | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: |
| Defendants. | (1) COMPEL DISCOVERY; AND<br>(2) FILE FURTHER MOTIONS |
| | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant U.S. Attorney, and hereby files its Response and Opposition to the motions filed on behalf of defendants Benjamin Daniel Williams and Nathaniel Gregory Williams, which is based upon the files and records of this case.

//

//

//

//

# I

## STATEMENT OF THE CASE

On January 9, 2008, a federal grand jury for the Southern District of California returned a two-count Indictment, charging Defendant (1) BENJAMIN DANIEL WILLIAMS, and Defendant (2) NATHANIEL GREGORY WILLIAMS, with (1) one count of importation of cocaine, in violation of 21 U.S.C. §§ 952 and 960 and 18 U.S.C. § 2; and (2) one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant (1) and Defendant (2) were arraigned on the Indictment on January 10, 2008, and both entered a not guilty plea.

# II

## STATEMENT OF FACTS

### A.   IMMIGRATION HISTORY

Defendant (1) Benjamin Daniel Williams is a United States citizen.

Defendant (2) Nathaniel Gregory Williams is a United States citizen.

### B.   CRIMINAL AND ARREST HISTORY

Defendant (1) Benjamin Daniel Williams has no known criminal record in the United States.

Defendant (2) Nathaniel Gregory Williams was arrested on October 18, 2004, for domestic violence in violation of California Penal Code § 243(e)(1); he was also arrested on March 4, 2007 for driving under the influence in violation of California Motor Vehicle Code § 23153(A) and § 23153(B); hit and run in violation of California Motor Vehicle Code § 20001(A) and 20002(A) and assault with a deadly weapon in violation of California Penal Code § 245(A)(1). On November 17, 2007, he was arrested for possession of marijuana in violation of California Penal Code § 11357(B).

### C.   INSTANT OFFENSE

On December 22, 2007, at approximately 12:40 p.m., Defendant (1) Benjamin Daniel Williams (Benjamin Williams) and Defendant (2) Nathaniel Gregory Williams (Nathaniel Williams) entered the United States from Mexico at the Calexico, California, West Port of Entry.

1  Benjamin Williams was the driver and Nathaniel Williams was the passenger in a 1991 Cadillac
2  deVille with no license plates. Customs and Border Protection Officer Enrique Hernandez made
3  contact with Benjamin Williams and Nathaniel Williams at the primary inspection booth at vehicle
4  primary lane number 7. Benjamin Williams presented a California drivers license and stated that
5  he was a United States citizen. Nathaniel Williams presented a California drivers license and also
6  stated that he was a United States citizen. Both Defendants gave a negative customs declaration.
7  Officer Hernandez noticed that both Defendants showed signs of nervousness. Both Defendants'
8  hands were noticeably shaking when they handed Officer Hernandez their drivers licenses, both
9  avoided eye contact while answering questions and both were hesitant to answer Officer
10 Hernandez' questions.

11  Officer Hernandez asked Benjamin Williams where he was going and what was the purpose
12 of his trip to Mexico. Benjamin Williams responded that he was on his way home to San Diego,
13 and that he has been visiting his girlfriend since yesterday. Officer Hernandez noticed that the
14 vehicle did not have license plates and asked Benjamin Williams who owned the vehicle.
15 Benjamin Williams responded that it was his girlfriend's vehicle. Officer Hernandez asked for the
16 vehicle registration and noticed that Benjamin Williams' name was on the registration. Benjamin
17 Williams also stated that he had the vehicle for a couple of months. In response to Officer
18 Hernandez' question regarding the frequency of his travels to Mexicali, Benjamin Williams
19 responded that he travels to Mexicali often. Officer Hernandez noticed that the TECS lane
20 crossing history showed only one prior crossing from Mexicali. Officer Hernandez then referred
21 the vehicle to secondary for further inspection.

22  In secondary, Customs and Border Protection Officer J. Garcia asked both Benjamin
23 Williams and Nathaniel Williams for their identification and for a customs declaration. Both
24 Defendant's gave a negative customs declaration. Officer Garcia requested a canine enforcement
25 officer inspect the vehicle. During the canine sweep, the canine alerted to the floorboard area of
26 the vehicle. Both Defendants were escorted to the vehicle secondary office.

27  Officer Garcia searched the vehicle and found a non-factory compartment in the floorboard
28 of the vehicle. Upon opening the compartment, Officer Garcia found 47 packages. One of the

1  packages was probed and tested positive for the presence of cocaine. The total weight of the
2  cocaine was 55.52 kilograms. Officer Garcia then placed both Defendants under arrest for
3  importation of cocaine.

4  **D.    INTERVIEW OF BENJAMIN WILLIAMS**

5  On December 22, 2007, at approximately 5:13 p.m. Immigration and Customs Enforcement
6  Agents Webster, Wood and Ballard, conducted a videotaped interview with Benjamin Williams.
7  Agent Webster advised Defendant of his Miranda rights in English. Defendant waived his rights
8  and agreed to speak with the agents.

9  Benjamin Williams stated that he and his brother, Nathaniel Williams, drove to Mexicali,
10 Mexico, on December 21, 2007, and stayed at a hotel. Benjamin could not remember the name
11 of the hotel and he did not know where it was located. Furthermore, he could not say where they
12 went or what they did while at the motel. Benjamin Williams stated that a friend picked out the
13 hotel, but he could not provide a name or description of the friend. Benjamin Williams finally
14 stated that there was no friend involved and that he and his brother just drove from their home in
15 San Diego and to Mexicali and stayed at a hotel. Agent Webster confronted Benjamin Williams
16 with inconsistencies in his statement, and Benjamin Williams stated that he thought there was
17 something in the vehicle but would not elaborate on what he thought it was.

18 Agent Webster began asking direct questions about how and when the Defendants traveled
19 to Mexicali. Benjamin Williams stated that they drove down on December 21. When confronted
20 with the fact that there was fresh bondo on the vehicle and it could not have been driven to
21 Mexicali on December 21, Benjamin Williams hesitated for a few moments then invoked his right
22 to remain silent.

23 **E.    INTERVIEW OF NATHANIEL WILLIAMS**

24 On December 22, 2007, Agent Webster advised Nathaniel Williams of his Miranda rights
25 in English. Nathaniel Williams waived his rights and agreed to speak with Agent Webster.

26 Nathaniel Williams stated that his brother asked him to help pick up his car and that they
27 drove to Mexicali on December 21, 2007, to pick it up. Nathaniel Williams stated that this was
28 the second time he had seen the car, the first time was two weeks ago. Agent Webster pointed out

1 the inconsistency with his brother's statement and Nathaniel Williams stated that he would tell the
2 truth.
3    Nathaniel Williams stated that his brother asked him to accompany him to Mexicali,
4 Mexico, to pick up the car he bought. He stated that an unknown Mexican guy picked them up
5 from their house at around 7:00 a.m. and drove them to Mexicali in a small sedan. Nathaniel
6 Williams assumed that this was a friend of his brother, but he could not describe what took place
7 during the ride, or what was said during the ride because he slept during the ride to Mexicali.
8 When they arrived in Mexicali, they got into the Cadillac and Nathaniel Williams noticed that the
9 seat did not work properly, and he did not enjoy the fact that his knees were up against the
10 dashboard. He also stated that he thought it was strange to drive all the way to Mexicali to get a
11 car, but figured that his brother must have gotten a good deal.
12    Nathaniel Williams denied knowing that there was a controlled substance in the car. He
13 stated that his brother has been acting different and that he does not ask him a lot of questions. He
14 stated that his brother did work at a Subway restaurant, but that he has not been going to work the
15 last few days. Agent Webster asked Nathaniel Williams about a receipt found in his wallet for the
16 withdrawal of $4000.00 from a credit card. Nathaniel Williams responded that he needed the
17 money to pay off other credit card debts because he is unemployed and he wanted a little money
18 for Christmas. In response to questioning, he also stated that the Cadillac may not have been the
19 vehicle that he saw his brother with few weeks ago.
20    During the interview, Nathaniel Williams asked several times how long he would be in jail.
21 When Agent Webster explained that people are often told that they will be paid around $1500.00
22 for crossing a few kilos of marijuana, that it is easy and if they are caught that nothing bad would
23 happen. When asked why he and his brother would need to cross a vehicle, he stated that Agent
24 Webster was pretty close to having the right story, then stated that he did not know there were
25 drugs in the car.
26    **F.    SPONTANEOUS STATEMENTS OF NATHANIEL WILLIAMS**
27    On December 22, 2007, while Nathaniel Williams was being transported to the Imperial
28 County Jail, he made an unsolicited comment to Agent Ballard. Nathaniel Williams asked Agent

1  Ballard how much time he was looking at. Agent Ballard stated that he did not know. Nathaniel
2  Williams then stated that he heard they would go easy on you for your first smuggling arrest. He
3  then said "I should have researched it," then quickly added that he did not know why he would
4  have researched it as he would have no reason to.

### III

### UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES

**A.    THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendants' specific requests below.

**(1)    The Defendants' Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendants the substance of Defendants' oral statements and Defendants' written statements. The Government has produced all of Defendants' written statements that are known to the undersigned Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendants.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendants with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required

1   to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements"
2   (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim
3   narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United
4   States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not
5   constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d
6   1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes
7   were scattered and all the information contained in the notes was available in other forms).  The
8   notes are not Brady material because the notes do not present any material exculpatory
9   information, or any evidence favorable to Defendant that is material to guilt or punishment.
10  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither
11  favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos,
12  27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence
13  was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable
14  under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendants.

15  **(2)     Arrest Reports, Notes and Dispatch Tapes**

16  The United States has provided Defendants with arrest reports. As noted previously, agent
17  rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16
18  discovery.

19  **(3)     Brady Material**

20  Again, the United States is well aware of and will continue to perform its duty under Brady
21  v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose
22  exculpatory evidence within its possession that is material to the issue of guilt or punishment.
23  Defendants, however, are not entitled to all evidence known or believed to exist which is, or may
24  be, favorable to the accused, or which pertains to the credibility of the United States' case.  As
25  stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the
26  prosecution does not have a constitutional duty to disclose every bit of information that might
27  affect the jury's decision; it need only disclose information favorable to the defense that meets the
28  appropriate standard of materiality." Id. at 774-775 (citation omitted).

1  The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(4)     Sentencing Information**

Defendants claim that the United States must disclose any information affecting Defendants' sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendants do not already possess the information about factors which might affect their guideline range, the United States would not be required to provide information bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and prior to their respective sentencing dates. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendants' demand for this information is premature.

//

**(5)** **Defendants' Prior Record.**

The United States has already provided Defendants with a copy of their criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6)** **Proposed 404(b) Evidence and 609 Evidence**

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendants with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

At this time, the United States intends to introduce as evidence any prior apprehensions, immigration contacts or convictions that are released in discovery.

**(7)** **Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendants, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

**(8)** **Preservation of Evidence**

The United States will preserve all evidence to which Defendants are entitled pursuant to the relevant discovery rules. However, the United States objects to Defendants' blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendants an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendants' defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendants, including photographs.

1  The United States has made the evidence available to Defendants and Defendants' investigators
2  and will comply with any request for inspection.
3  Again, the United States will continue to comply with its obligations pursuant to
4  United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

5  **(9)    Tangible Objects**

6  The Government has complied and will continue to comply with Rule 16(a)(1)(E) in
7  allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all
8  tangible objects seized that is within its possession, custody, or control, and that is either material
9  to the preparation of Defendants' defense, or is intended for use by the Government as evidence
10 during its case-in-chief at trial, or was obtained from or belongs to Defendants. The Government
11 need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767
12 F.2d 574, 584 (9th Cir. 1984).

13 **(10)   Evidence of Bias or Motive to Lie**

14 The United States is unaware of any evidence indicating that a prospective witness is biased
15 or prejudiced against Defendants. The United States is also unaware of any evidence that
16 prospective witnesses have a motive to falsify or distort testimony.

17 **(11)   Impeachment Evidence**

18 As stated previously, the United States will turn over evidence within its possession which
19 could be used to properly impeach a witness who has been called to testify.

20 **(12)   Criminal Investigation of Government Witness**

21 Defendants are not entitled to any evidence that a prospective witness is under criminal
22 investigation by federal, state, or local authorities. "[T]he criminal records of such [Government]
23 witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);
24 United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records
25 of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United
26 States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that
27 the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a
28

1  defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542
2  F.2d at 1026).
3      The Government will, however, provide the conviction record, if any, which could be used
4  to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such
5  information, disclosure need only extend to witnesses the United States intends to call in its case-
6  in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,
7  607 F.2d 1305, 1309 (9th Cir. 1979).
8      **(13)    Evidence Affecting Perception, Recollection, Communication or Truth-Telling**
9      The United States is unaware of any evidence indicating that a prospective witness has a
10 problem with perception, recollection, communication, or truth-telling.
11     **(14)    Witnesses Favorable to the Defendant**
12     As stated earlier, the Government will continue to comply with its obligations under Brady
13 and its progeny.  Other than the material witness in this case, the Government is not aware of any
14 witnesses who have made an "arguably favorable statement concerning the defendant or who could
15 not identify him or who w[ere] unsure of his identity, or participation in the crime charged."
16     **(15)    Statements Relevant to the Defense**
17     To reiterate, the United States will comply with all of its discovery obligations.  However,
18 "the prosecution does not have a constitutional duty to disclose every bit of information that might
19 affect the jury's decision; it need only disclose information favorable to the defense that meets the
20 appropriate standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).  Further,
21 Defendants are not entitled to the Grand Jury transcripts.
22     **(16)    Jencks Act Material**
23     The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified
24 on direct examination, the Government must give the Defendant any "statement" (as defined by
25 the Jencks Act) in the Government's possession that was made by the witness relating to the
26 subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks
27 Act is (1) a written statement made by the witness and signed or otherwise adopted or approved
28 by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(17) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(18) Agreements Between the Government and Witnesses**

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

**(19) Informants and Cooperating Witnesses**

The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the Government determines that there is a confidential informant who is a material witness in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

**(20) Bias by Informants or Cooperating Witnesses**

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendants. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

1      **(21)   TECS Reports**

2     Defendants are not entitled to TECS reports. Prior border crossings do not fall within the
3 scope of 404(b) unless offered for a purpose consistent with 404(b).

4      **(22)   Expert Summaries**

5     The Government will comply with Rule 16(a)(1)(G) and provide Defendants with a written
6 summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705
7 of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the
8 expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those
9 opinions.

10      **(23)   Residual Request**

11     The Government has already complied with Defendants' request for prompt compliance
12 with its discovery obligations. The Government will comply with all of its discovery obligations,
13 but objects to the broad and unspecified nature of Defendants' residual discovery request.

14 **B.    NO OBJECTION TO LEAVE TO FILE FURTHER MOTIONS**

15     The Government does not object to the granting of leave to allow Defendants to file further
16 motions as long as the additional motions are based on newly discovered evidence or discovery
17 provided by the Government subsequent to the instant motion at issue, and the order applies
18 equally to both parties.

19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

## VI

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed.

DATED: February 10, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **SOUTHERN DISTRICT OF CALIFORNIA** | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0092-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| | ) | |
| BENJAMIN DANIEL WILLIAMS (1), | ) | |
| NATHANIEL GREGORY WILLIAMS (2), | ) | |
| | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO:**

**1. COMPEL DISCOVERY**
**2. FILE FURTHER MOTIONS**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Stephen P. White,** spw1@sbcglobal.net

**Joseph Milchen,** JMilchen@cox.net

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 10, 2008.

                                                s/ A. Dale Blankenship
                                                A. DALE BLANKENSHIP